IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) CRIMINAL NO.  3:23-cr-71 |
| Plaintiff, | ) |
| | ) DEFENDANT'S SENTENCING |
| vs. | ) MEMORANDUM |
| | ) |
| BOB ARTHUR PHILLIPS, | ) |
| | ) |
| Defendant. | ) |

**TABLE OF CONTENTS**

I.     INTRODUCTION………………………………………………………………………….1

II.    SENTENCING PROCEDURE…………………………………………………………….2

III.   PURSUANT TO THE FACTORS SET FORTH IN 18 U.S.C. § 3553(a), A SENTENCE BELOW THE ADVISORY GUIDELINE RANGE IS SUFFICIENT…………………….2

IV.   RESTITUTION……………………………………………………………………………7

V.    CONCLUSION…………………………………………………………………………....9

**I.     INTRODUCTION**

On April 29, 2024, Mr. Phillips accepted responsibility for his conduct by pleading guilty to Count One, Distribution and Receipt of Child Pornography.   This matter is scheduled for a sentencing hearing on September 25, 2024.   The final presentence report provides a total offense level of 37, and a criminal history category of I, resulting in an advisory sentencing guideline range of 210-240 months.   (PSR, ¶¶ 85, 86).   Neither party has objected to this calculation.   Mr. Phillips is requesting a downward variance because a sentence below the advisory guideline range would be sufficient, but not greater than necessary, to fulfill the purposes of sentencing.   There

1

have also been several restitution claims made.  (PSR, ¶ 25).

## II.   SENTENCING PROCEDURE.

The United States Supreme Court, in *United States v. Booker*, 125 S. Ct. 738(2005), held that the United States Sentencing Guidelines are advisory, as opposed to mandatory.  *Id*. 125 S. Ct. at 757.

> "Thus, the sentencing court must first determine the appropriate guidelines sentencing range, since that range does remain an important factor to be considered in the imposition of a sentence...Once the applicable range is determined, the court should then decide if a traditional departure is appropriate under Part K and/or §4A1.3 of the Federal Sentencing Guidelines.  Those considerations will result in a 'guidelines sentence.'  Once the guidelines sentence is determined, the court shall then consider all other factors set forth in §3553(a) to determine whether to impose a sentence under the guidelines or a non-guidelines sentence."

*United States v. Haack*, 403 F.3d 997, 1003 (8th Cir. 2005).

## III.   PURSUANT TO THE FACTORS SET FORTH IN 18 U.S.C. § 3553(a), A SENTENCE BELOW THE ADVISORY GUIDELINE RANGE IS SUFFICIENT.

   A.   <u>Legal Authority</u>

It is well established that the court shall consider all factors set forth in 18 U.S.C. § 3553(a) to determine whether a sentence is sufficient, but not greater than necessary, to address the sentencing purposes outlined in paragraph 2 of this subsection.  *See United States v. Haack*, 403 F.3d 997, 1003 (8th Cir. 2005).   Paragraph 2 provides the following stated purposes:

> "The need for the sentence imposed - A) to reflect the seriousness of the offense; to promote respect for the law, and to provide just punishment for the offense; B) to afford adequate deterrence to criminal conduct; C) to protect the public from further crimes of the defendant; and D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

The sentencing factors to be considered by the court include, the nature and circumstances of the offense, the history and characteristics of the defendant, and the kinds of sentences

available. 18 U.S.C. § 3553(a)(1).  In addition to these sentencing factors, the court is permitted to entertain policy considerations pertinent to the relevant guideline section.  *Rita v. United States*, 127 S. Ct. 2456, 24654 (2007).  The court may vary outside of the guideline range based on a policy disagreement with the underlying guideline section.  *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007).  The sentencing court "may not presume that the guidelines range is reasonable," but rather "must make an individualized assessment based on the facts presented to arrive at a sentence that is sufficient, but not greater than necessary."  *Gall v. United States*, 128 S. Ct. 586, 597 (2007).

    B.  <u>Analysis</u>

One problem with USSG §2G2.2 is that the typical defendant scores very high under the guidelines relative to the statutory mandatory minimum and maximum sentence.  The applicable guideline range is substantially inflated based on factors that do not take into account the individual circumstances of the case.  In December of 2012, the Federal Sentencing Commission released a report to Congress addressing this issue.  *See United States Sentencing Commission's Report to Congress: Federal Child Pornography Offenses* (2012) ["*Commission's Report*"].  The report in large part was a response to the number of below-guideline sentences in cases involving child pornography guidelines for non-production offenders.  *Id*. at ii.  The report notes that "as a result of recent changes in the computer and Internet technologies that typical non-production offenders use, the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability."  *Id.* at 323.  Enhancements for the use of the computer, the type of images and the volume of images "now apply to most offenders."  *Id*. at 209, 323.  Thus, the guideline "fails to differentiate among offenders in terms

of their culpability." *Id*.

While the individual circumstances relating to culpability may vary significantly, the enhancements are applied in equal force.  For example, a relatively unsophisticated offender obtaining images through a readily available peer-to-peer network will receive an enhancement for distribution, as does the more sophisticated user who uses technological expertise to create private and secure trading communities to evade, and help others evade, detection by law enforcement.  *See Commission's Report* at 61-62. Certain enhancements apply in most every case and are not effective in differentiating aggravated offenses.  Based on 2023 statistics published by the United States Sentencing Commission, these enhancements are applied with the following regularity:

| | |
|---|---|
| Material involving a minor under 12 (§2G2.2(b)(2)) | 94.4% |
| Use of computer (§2G2.2(b)(6)) | 97.1% |
| 600 or more images | 76.6% |

*See United States Sentencing Commission, Use of Guidelines and Specific Offense Characteristics for fiscal year 2023,* available at http://www.ussc.gov.

In finding §2G2.2 ill-suited to fashioning a reasonable sentence, the court, in *United States v. Beiermann, 599 F.Supp. 2d 1087, 1105 (N.D. Iowa 2009),* found that the guideline "impermissibly and illogically skews sentences for even average defendants to the upper end of the statutory range, regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct, or degree of culpability."  The court further found that the guideline

4

enhancements, "some quite extreme, are based on circumstances that appear in nearly every child pornography case: using the internet, amassing numerous images (made particularly easy by the internet), presence of video clips counted as 75 images each, presence of images of prepubescent minors and violence (broadly defined to include a prepubescent minor engaged in a sex act), return for other images." *Id*.  For those reasons, the court rejected the advisory guideline range on policy grounds.  *Id.*

Although Mr. Phillips' offense was committed in a manner typical of his charge, his guideline range is enhanced well above the base offense level.  These enhancements correlate to commission of the offense with the use of computer technology, rather than to aggravated personal characteristics or offense conduct.  The enhancements contained in the above chart have the following impact on Mr. Phillips' offense level:

| Material involving a minor under 12 (§2G2.2(b)(2)) | +2 |
| Use of computer (§2G2.2(b)(6)) | +2 |
| 600 or more images | +5 |
| **TOTAL ENHANCEMENT** | **+9** |

These enhancements, inherent to the commission of the offense, increase Mr. Phillips' advisory sentencing guideline range from 78-97 months to 210-240 months.  Some courts have also ruled that because the applicable guideline was not adopted following the normal empirical approach, it is entitled to less deference than other guideline provisions.  *See United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010) and *United States v. Grober*, 624 F.3d 592, 608 (3d Cir.

2010). Based on all of these considerations, the total offense level overstates the seriousness of the instant offense.

      C.      <u>The History and Characteristics of Mr. Phillips</u>

There are several additional mitigating factors in this case which support a significant downward variance. Mr. Phillips was born in 1987 in Parsons, Kansas. (PSR, ¶ 52). He was raised in Kansas and recalls his family moving every year due to financial hardship. *Id.* His parents separated before Mr. Phillips' tenth birthday. *Id.* Shortly after his parents' separation, Mr. Phillips' father committed suicide. *Id.* When Mr. Phillips was approximately 16 years old, he and his sister resided with an aunt for a short period of time because his mother could not locate a residence. *Id.* Although they moved frequently, Mr. Phillips indicated that his basic needs were always met.

Mr. Phillips has received supplemental security income for a cognitive disability since he was approximately eight years old. (PSR, ¶ 76).[1] According to Mr. Phillips' sister, Sally, both their mother, Sharon, and Sally also receive supplemental security income for a cognitive disability. (PSR, ¶¶ 57, 58). Sally Phillips advised the probation office that all three of them (Sharon, Sally and Robert) suffer from "mental retardation." (PSR, ¶¶ 62-66). Due to the combination of the offense of conviction, and Mr. Phillips' mental, physical and cognitive issues, he and his family are concerned about his safety while in prison. Mr. Phillips has already been bullied while in custody at the Muscatine County Jail. (PSR, ¶ 65(b)).

Following Mr. Phillips' sentence, there will be a mandatory period of supervised release

---

1 Both the probation office and defense counsel have attempted to obtain Mr. Phillips' social security records, but to date, the records have not been received.

with recommended conditions to include:  sex offender treatment, no contact with minors, no unauthorized access to a computer or related device, compliance with sex offender registration and a submission to searches conducted by the probation office.  Thus, the supervision will result in close monitoring over a lengthy period of time.

Mr. Phillips has fully accepted responsibility for his conduct.  (PSR, ¶ 28).  He has no prior criminal record either as a juvenile or as an adult.  (PSR, ¶¶ 45-49).  Indeed, he had never even been arrested prior to this case.  (PSR, ¶ 50).  During the time he has been in custody at the Muscatine County Jail, he has only received a disciplinary report on one occasion, March 31, 2024.  (PSR, ¶ 8(a)).  The report appears to be based on minor infractions.  *Id*.

A downward variance is appropriate in the present case for several reasons.  First, the applicable guideline provision does not adequately reflect the specific characteristics of Mr. Phillips.  Second, because the applicable guideline was not adopted following the normal empirical approach, it is entitled to less deference than other guideline provisions.  Third, as was demonstrated above, there are many individual mitigating factors in Mr. Phillips' case.  Based on all of these factors, a guideline sentence would be much greater than necessary to comply with the purposes of sentencing.

## IV.   RESTITUTION

In *Paroline v. United States*, 134 S. Ct. 1710, 1719 (2014), the Supreme Court stated that the burden of demonstrating the amount of the loss sustained by a victim as a result of an offense rests with the prosecution.  As the court recognized, the proximate cause requirement imposed in § 2259(b)(3)(F) applies to all losses described in § 2259, including 1) certain medical services, 2) physical and occupational therapy, 3) transportation, temporary housing and childcare, 4) lost

income, 5) attorney's fees and costs, and 6) "any other losses suffered by the victim as a proximate result of the offense." 134 S. Ct. at 1720.

In endeavoring to guide district courts applying § 2259, the court noted:

> [A] court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses. The amount would not be severe in a case like this, given the nature of the causal connection between the conduct of a possessor like *Paroline* and the entirety of the victim's general losses from the trade in her images, which are the product of the acts of thousands of offenders. It would not, however, be a token or nominal amount. The required restitution would be a reasonable and circumscribed award in recognition of the indisputable role of the offender in the causal process underlying the victim's loss and suited to the relative size of that causal role. This would serve the twin goals of helping the victim achieve eventual restitution for all her child-pornography losses and impressing upon offenders the fact that child-pornography crimes, even simple possession, affect real victims.

134 S. Ct. at 1727. In general, "a court must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses." *Id*.

In conducting that assessment, potentially relevant factors include:

1) The number of past criminal defendants found to have contributed to the victim's general losses;

2) Reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses;

3) Any available and reasonable reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted);

4) Whether the defendant reproduced or distributed images of the victim;

5) Whether the defendant had any connection to the initial production of the images;

      6)      How many images of the victim the defendant possessed; and

      7)      Other facts relevant to the defendant's relative causal role.

*United States v. Evans*, 802 F.3d 942, 949, n. 9 (8th Cir. 2015)(internal quotations omitted), *quoting Paroline*, 134 S. Ct. at 1728. "These factors are to be rough guideposts for determining an amount that fits the offense." *Id.* While mandatory restitution is to be imposed without consideration of the economic circumstances of the defendant, the court is required to consider the defendant's ability to pay in determining whether restitution is to be paid by lump sum, a schedule of payments, or nominal payments. *United States v. Miller*, 419 F.3d 791, 794 (8th Cir. 2005).

### V.    CONCLUSION

WHEREFORE, Mr. Phillips respectfully requests that the Court impose a sentence consistent with the arguments in this sentencing memorandum.

> FEDERAL DEFENDER'S OFFICE
> CBI Bank & Trust Building
> 101 W. 2nd Street, Suite 401
> Davenport, Iowa 52801-1815
> TELEPHONE: (563) 322-8931
> TELEFAX: (563) 383-0052
> EMAIL: terry_mcatee@fd.org
>
> By: /s/ *Terence McAtee*
>      **Terence McAtee**
>      Assistant Federal Defender

cc: Matthew Stone, AUSA

CERTIFICATE OF SERVICE
I hereby certify that on September 19, 2024, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.
         /s/